# United States Court of Appeals
## For the First Circuit

No. 02-2590

K. ANDREW HULL; PATRICIA RIVERA-HULL; and
RIVERA-HULL CONJUGAL PARTNERSHIP,

Plaintiffs, Appellants,

v.

MUNICIPALITY OF SAN JUAN; ACE INSURANCE COMPANY;
and TARGET ENGINEERING, S.E.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini-Ortiz, Senior U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch and Howard, Circuit Judges.

Andrew R. Schulman with whom Getman, Stacey, Tamposi,
Schulthess & Steere, P.A. was on brief for appellants.
Luis G. Martínez-Lloréns with whom Colón, Colón & Martínez,
P.S.C. was on brief for appellees Target Engineering, S.E., and Ace
Insurance Company.
Harold D. Vicente-González for appellee Municipality of San
Juan.

January 20, 2004

**BOUDIN**, <u>**Chief Judge**</u>.    This appeal arises from the district court's dismissal of a personal injury lawsuit.  The basis for the dismissal was the district court's finding of fraud in the conduct of the litigation.  Because the finding of fraud as well as the remedy adopted by the district court are contested on appeal, we begin with a bare-bones summary of what happened, reserving some of the details until discussion of the issues raised on appeal.

On November 8, 1999, Andrew K. Hull of California was visiting San Juan, Puerto Rico, on a business trip.  While walking through a city sidewalk site that was under repair, Andrew allegedly caught his foot on a raised piece of wire mesh and fell heavily, hitting his face and left arm.  He proceeded to dinner but, still feeling pain in his left elbow, visited a local hospital thereafter where x-rays revealed a fracture of the elbow and lesser injury to the nose.  Andrew attended business meetings over the next three days and then returned to California.

After his return, Andrew allegedly experienced a range of symptoms, consulted a number of doctors, and underwent several surgeries.  One was to repair a nasal obstruction and deviated septum; others were spinal operations to relieve spinal cord compression and repair an extruded disc and related conditions. Carpal-Tunnel syndrome was diagnosed in both wrists, and surgery as to both to relieve this condition ensued.

Andrew also complained of mental and emotional problems, including poor memory, sleeplessness, depression, fatigue, headaches and sexual dysfunction. After testing, a neurologist found that Andrew suffered from post-concussion syndrome. Although Andrew had not lost consciousness at the time of the fall, the neurologist opined that the syndrome could nevertheless have resulted from the fall and the doctor prescribed treatments.

In due course, Andrew and Patricia, his wife, filed this diversity action in the federal district court in Puerto Rico, against the municipality, the contractor working on the sidewalk, and the contractor's insurer. The complaint, charging negligence, attributed to the accident the physical and mental impairments already described as well as a few other symptoms (e.g., rotator cuff injury, aphasia) and loss of income. On his own behalf, Andrew sought $2 million in damages.

Patricia claimed separately for loss of income (due to the need to care for Andrew) and mental anguish. Her claim was for $300,000. An additional $561,000 was sought by the "conjugal partnership," a community property concept recognized under the law of Puerto Rico, e.g., Fernandez-Cerra v. Commercial Ins. Co. of Newark, 344 F. Supp. 314, 316 (D.P.R. 1972); but no separate argument has been offered on appeal as to its claim, and we therefore disregard it.

Extensive discovery was conducted by the defendants over many months.  Andrew did not reveal, in response to questions fairly seeking this information, facts about his prior injuries and treatment--until the defense uncovered this information on its own. These included a rear-end automobile collision in 1982 in which Andrew suffered back injuries; a neck injury in 1995 leading to a diagnosis of nerve injury (neuropathy); and a 1996 slip and fall incident in an Orlando, Florida, hotel, resulting among other things in a diagnosis of Carpal-Tunnel syndrome.

The information was patently material.  Various symptoms and conditions associated with Andrew's earlier injuries overlapped with those that he claimed had resulted from the more recent fall in Puerto Rico.  This is obvious with respect to the Carpal-Tunnel syndrome but, in addition, the rear-end collision in 1982 was a possible source of some of the spinal damage, and nerve injury and sleep problems had been claimed as a result of one or both of the other two earlier accidents.

When taxed about these omissions, Andrew's position was that in the heat of his deposition he had not remembered any of these incidents or claims.  As to their absence from interrogatory answers, Andrew said that defendants had not asked the right questions.  The defendants moved for dismissal of the case on the ground that the litigation was being perpetrated through fraud.

In October 2002, the district court granted the motion and dismissed the case in a 23-page opinion and order, analyzing in detail Andrew's answers to interrogatories, deposition questions and in affidavit statements. The district judge concluded "by clear and convincing evidence" that Andrew had committed fraud, said that the proper remedy was a matter of discretion, and concluded that "weighing all of the circumstances in this case," dismissal was the proper sanction "commensurate with Mr. Hull's conduct" and to deter future misconduct.

On this appeal, the plaintiffs make three different claims of error: that the fraud finding was not supported by clear and convincing evidence; that dismissal was not an appropriate sanction; and that--independent of these arguments--dismissal of Patricia's claims for her own mental anguish and economic expense was not supported by any independent finding of fraud on her part. We reject the first two claims but conclude that a remand is required to determine whether Patricia's claims should be dismissed.

The first question is whether Andrew engaged in a pattern of deliberate deception in the course of discovery. It is common ground that clear and convincing evidence is required, <u>Aoude</u> v. <u>Mobil Oil Corp.</u>, 892 F.2d 1115, 1118 (1st Cir. 1989). On the other hand, the district court's findings as to whether Andrew dishonestly withheld information are reviewed only for "clear

error." Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002). (The phrase "abuse of discretion" is sometimes used, e.g., Aoude, 892 F.2d at 1117-18, but the phrasing makes little difference.)

It is clear that Andrew failed to disclose the prior injuries when specifically asked for such information during his deposition and that the omissions were material. The harder issue, usually the sticking point in perjury and fraud cases, is Andrew's state of mind which--absent a confession--must be inferred from circumstances. Here, several circumstances combine to reinforce the district court's finding of scienter.

First, the information was squarely sought. In his deposition, Andrew was asked directly about his prior medical history and failed to reveal any of the three prior incidents. All three of the prior incidents were serious and sufficiently related to the current claim of injuries, so that it is unlikely that even one would have been forgotten. That all three would have been forgotten through happenstance or distraction strains belief. And, given Andrew's obvious self-interest to enlarge his potential damages, the inference of deliberate deceit is hard to escape.

Second, there is a broader pattern of deceit. For example, when the Orlando incident was unearthed by the defense, Andrew gave answers as to his medical treatment omitting the diagnosis of Carpal-Tunnel syndrome; and he withheld such

information from his own doctor in this case, reducing the likelihood that it would be discovered. Andrew also appears to have lied when he answered an interrogatory by saying that all of his present claimed injuries were the result of the fall in San Juan, although this might be a closer question.[1]

Third, Andrew was not a neophyte. He was the president of a firm named "Settlement Associates" which sells insurance and structured settlements to law firms and other companies. His wife was a claims manager for State Farm Insurance Company. Further, his prior injuries had resulted in a range of doctor and hospital visits over a substantial period, and he could not have avoided learning a good deal about the causes and nature of his prior injuries.

We find no clear error in the district court's finding that Andrew's fraud was proved by clear and convincing evidence. It is easy enough to forget details of one's past; and possibly Andrew did suffer some impairment in the fall affecting his memory. But the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless.

---

[1]The defense relies upon Andrew's negative answers to two interrogatory questions dealing with medical history; but one (strangely) arguably excluded "personal injury" and the other related to post-claim accident injuries or illnesses. Yet in response to the latter, Andrew incautiously added that "all" his present injuries were due to the San Juan accident.

The next question is whether a district court has power to dismiss a complaint because the plaintiff lies substantially and materially in the course of discovery. In our own circuit, fraud-- at least of a kind sometimes called "fraud on the court"[2]--is a potential basis for dismissing a claim on the facts where

> a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

Aoude, 892 F.2d at 1118-19. There is similar case law in other circuits. Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1476-78 (D.C. Cir. 1995); Wyle v. R.J. Reynolds Indus., 709 F.2d 585, 589 (9th Cir. 1983).

Although not so terrible as attempted bribery of a judge, Andrew's conduct fits within the Aoude category. It was deliberate, broad enough to constitute a scheme, unconscionable, and calculated to enhance damages, thus unfairly hampering the defense. The unfairness was two-fold: the scope of the injuries

---

[2]The "fraud on the court" phrase is also sometimes used in drawing distinctions in the quite different context of reopening final judgments--especially in distinguishing between fraud that must be presented within one year of the judgment and fraud that can be invoked later under the savings clause of Fed. R. Civ. P. 60(b). Compare 11 Wright & Miller, Federal Practice and Procedure, § 2860 (2d ed. 1995) (discussing Fed. R. Civ. P. 60(b)(3) ("fraud, . . . misrepresentation or other misconduct") with id. § 2870 (discussing "fraud on the court" under the savings clause).

-8-

attributable to Andrew's fall in Puerto Rico was likely to be the main issue in the case, and, in the nature of things, past medical information is peculiarly within the privileged control of the plaintiff. The same conduct might not necessarily be enough to reopen a final judgment after one year, Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp., 71 F.3d 44, 47-49 (1st Cir. 1995), but finality of long-standing judgments is a different matter than dismissal of a current complaint.

That a remedy is in principle available does not mean that its use is reasonable in all circumstances. Here, plaintiffs make both a substantive and a procedural objection. The first is that it was unreasonable to use so extreme a remedy as dismissal, especially where the defense ultimately gained the information and lesser remedies were available. The second is that the district court erred by not specifically considering the pros and cons of alternative lesser remedies. Both are uphill arguments, given the trial judge's special competence in judging the extent of the misbehavior and its effects. Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).

Starting with substance, the sanction was obviously severe and lesser sanctions were available. For example, the court could have debarred Andrew from presenting certain claims of injury, underscored the jury's ability to draw negative inferences from his deceits, or both. And while the deceits imposed extra

expenses on the defense, an award of attorney's fees and costs could have been treated as sufficiently offsetting this damage.

On the other hand, dismissing only the affected claims of injury would have wiped out most of the main damage claims anyway, while inference drawing would be available without a sanction and could be pretty mild in effect if Andrew were nimble on cross-examination. His deceits were substantial, deliberate, and went to the heart of the case. And since not everyone will be caught, the penalty needs to be severe enough to deter. In the choice of remedy, there was no abuse of discretion--the proper test as to remedy. Aoude, 892 F.2d at 1117; Fernandez v. Leonard, 963 F.2d 459, 462 (1st Cir. 1992).

As for procedure, plaintiffs draw our attention to cases in other circuits saying that the trial judge must expressly consider lesser alternatives before adopting the extreme remedy of dismissal; and they urge us to adopt such a rule. Shepherd, 62 F.3d at 1479; Halaco Eng'g Co. v. Costle, 843 F.2d 376, 381-82 (9th Cir. 1988). We agree that lesser remedies ought to be considered, where reasonably available, whenever a judge imposes the harshest sanction. But in our view, how much consideration, and in what form depend upon the circumstances.

In this instance, the district judge did not grasp thoughtlessly for dismissal. The choice of remedy followed a careful study over many pages of the precise deceits and Andrew's

-10-

culpability; the court recognized that it had discretion as to remedy; and it said that dismissal was "commensurate" with Andrew's conduct and the need to deter "this type of behavior from recurring"--behavior that the court said went well beyond injury to an opposing litigant and threatened "the integrity of this court."

Requiring a district judge to list and address alternatives may sometimes make sense, for example where the judge has ignored a seemingly superior remedy. Occasionally it may be a polite way to say that the remedy chosen is disproportionate to the offense--also not the case here. How much explanation is required of the remedy chosen, and how much discounting of alternatives may be warranted, depend on the facts, and to us a mindlessly mechanical rule makes no sense. Here, the district court did enough to assure reasoned consideration of the remedy.

Patricia's claims are a different matter. The subject of claims by one who is secondarily injured is complicated, but Puerto Rico law allows one spouse to recover in some cases at least for emotional distress suffered through the injury of the other spouse, Santini Rivera v. Serv Air, Inc., 137 P.R. Dec. 1, 10 (1994). Nor do defendants suggest that such a claim is barred because the directly injured spouse is debarred from recovery by his own misconduct in court.

Instead, defendants argue that Patricia joined actively in the fraud. They say that she joined in the complaint asserting

that her own damages were due in part to Andrew's Carpal-Tunnel syndrome and back injuries allegedly due to the San Juan accident; that she joined by cross reference her husband's false interrogatory answer ("All the injuries and treatment I had were as a result of the 11-9-99 incident which is the subject of the complaint"); and that when the plaintiffs were ordered by the court to disclose all of Andrew's medical history, she joined in the response which failed to disclose the full history of prior accidents and treatment.

Defendants then argue that Patricia must have known of the three prior incidents of greatest importance (1982, 1995, 1996) and, given the filings made on her behalf, is equally responsible for the deceits. They also note that Patricia worked for many years as a claims manager at State Farm Insurance Company and dealt with personal injury claims, so had to understand the importance of the omissions. Quite possibly the district court did believe that she was complicit in the fraud, and the evidence may well support such conclusion.

Still, nowhere does the district court's decision separately muster evidence of Patricia's culpability or make an express finding that she personally engaged in or knowingly abetted the fraud. The single strongest evidence of fraud against Andrew is his deposition answers and we know nothing about what, if anything, Patricia said in any deposition of her own. The proper

-12-

solution is a remand to allow the district judge to make his own determination and supporting findings as to Patricia's responsibility for the fraud--assuming that she thinks it advisable to proceed with her claims which are now much weakened by Andrew's lack of credibility.

The plaintiffs have asked that any remand that may be necessary should be conducted before a different judge. The ground given is that the district court's findings of fraud are so couched as to "suggest[] some antipathy to [the] litigant"; plaintiffs' counsel says that while the "judge [who presided in the district court] would, no doubt, remain an impartial and professional jurist on remand," a new judge approaching the case "on a fresh page" would be better. The defendants oppose the request.

The statute providing for remands confers on the circuit courts authority to make such orders "as may be just under the circumstances," 28 U.S.C. § 2106 (2000); and remand orders by the circuit court to a different judge have been held permissible by the Supreme Court, Liteky v. United States, 510 U.S. 540, 554 (1994). But views formed by a judge in considering a case are normally not a sound basis either for required recusal or for directing that a different judge be assigned on remand. Liteky, 510 U.S. at 555-56. In this instance, nothing in the district judge's decision warrants the remedy sought by plaintiffs.

The judgment of dismissal is <u>affirmed</u> as to the claims of Andrew Hull and the conjugal partnership.  As to the individual claims of Patricia Hull, the judgment is <u>vacated</u> and the matter <u>remanded</u> for further proceedings consistent with this decision.

<u>It is so ordered</u>.