# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 6, 2011

Lyle W. Cayce
Clerk

No. 10-31257

NICKEY BROWN,

Plaintiff - Appellant

v.

OIL STATES SKAGIT SMATCO; OIL STATES SKAGIT SMATCO, L.L.C.,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Nickey Brown, a former employee of Defendants-Appellees Oil States Skagit Smatco and Oil States Skagit Smatco, L.L.C., brought a lawsuit against Oil States under Title VII, alleging claims of racial harassment and constructive discharge. In a deposition for this case, Brown testified that he quit his job at Oil States solely because of racial harassment. However, four months earlier, in a deposition for a personal injury lawsuit, Brown testified that he left his job at Oil States solely because of back pain related to a car accident. Based on this conflicting testimony, Oil States filed a motion for sanctions, seeking dismissal of both of Brown's claims. The district court found that Brown committed perjury and granted Oil States' motion for

No. 10-31257

sanctions, dismissing Brown's complaint with prejudice. Brown appeals the district court's dismissal of his complaint, arguing that a less severe sanction was more appropriate and that the district court should have held an evidentiary hearing to allow Brown to explain his conflicting testimony. Brown's lawyer, who was separately sanctioned, appeals the denial of his motion for recusal of the magistrate judge. For the following reasons, we AFFIRM.

## I. Factual and Procedural Background

Nickey Brown ("Brown") was employed as a contract welder for Oil States Skagit Smatco and Oil States Skagit Smatco, L.L.C. (collectively "Oil States") from March 12, 2008, until he resigned on June 11, 2008. Brown, an African-American, alleges that several of his co-workers at Oil States made racially derogatory remarks to him on a daily basis and subjected him to racial graffiti and the display of a noose. Brown also claims that he was subjected to life-threatening activity, such as "heavy plates and pipes being dropped near him." Brown states that although he complained to his foremen about this behavior, the objectionable conduct continued. Brown claims that he felt compelled to resign due to this racial harassment and life-threatening conduct.

On June 16, 2009, Brown filed a complaint against Oil States in the United States District Court for the Eastern District of Louisiana. Brown brought the action under Title VII, 42 U.S.C. § 2000e, asserting claims of racial harassment[1] and constructive discharge. The court granted Brown leave to proceed *in forma pauperis* ("IFP").

On January 5, 2010, Brown gave deposition testimony in a personal injury lawsuit that he filed against State Farm Mutual Automobile Insurance Company relating to an automobile accident that occurred in March 2008. Brown testified as follows:

---

[1] Brown's racial harassment claim is essentially a hostile work environment claim.

No. 10-31257

A.    After the accident, I went back to work at Oil States. After I got hit, I went back to work at Oil States. They put me on light duty. I told them I was in an accident over there. They put me on light duty. I worked over there like on light duty for like two months or whatever.

*        *        *

Q.    You stayed at Oil States for, approximately, two months doing light-duty work?
A.    Exactly, yes, sir.
Q.    Then you stopped?
A.    Uh-huh.
Q.    Why?
A.    Because my back was killing me. I stayed in pain all the time. I told the boss over there that and stuff like that.
Q.    Did you stop working as a contract welder . . . because of this accident, or did you stop working . . . for any other reason?
A.    Because of the accident.

*        *        *

Q.    Are [the company supervisors] going to say the reason you left work was because of this accident?
A.    Yes, sir. They knew my back was killing me and stuff like that. I was eating Tylenols like M&Ms and stuff trying to keep going and stuff because I had car notes to pay and stuff like that, rent to pay.

During this deposition, Brown did not mention racial harassment as a reason for his resignation from Oil States.

On May 26, 2010, Brown testified in a deposition in the instant case. Brown provided the following sworn testimony regarding his decision to leave Oil States:

Q.    You quit on June 10, 2008; does that sound familiar?
A.    That sounds familiar.
Q.    Who did you talk to when you quit?
A.    I talked to Frank [a company supervisor].
Q.    What did you tell Frank?
A.    "Frank, man, this guy calling me all kind of niggers and spitting around me and stuff, and all this stuff, monkeys and stuff." Frank already knew about it and stuff like that. "I'm going to go talk to

3

No. 10-31257

him." "No. Don't go talk to him. I quit." "Man, why you going? Don't quit. We need you, man. You a good worker," and stuff like that. "No, man. I quit. I had enough." I said, "Oh, that's it. I might have a breakdown over here." I said, "That's enough. I quit."

\* \* \*

Q.    Was there any other reason, other than what you've already told me, for why you quit?

A.    I don't understand that question.

Q.    Did any other reason play a role in why you decided to quit, other than what you've told me today?

A.    Oh, no, ma'am.

In this deposition, Brown explained that his only reason for leaving Oil States was racial harassment. Brown never mentioned his back pain, contradicting his deposition testimony in the *State Farm* proceeding.

Oil States discovered the contradictory deposition testimony and filed a motion for sanctions on July 23, 2010. Oil States contended that Brown plainly committed perjury, given the direct conflict between Brown's testimony in the two cases. Oil States argued that, because of this blatant misconduct, the court should dismiss Brown's complaint with prejudice. In the alternative, Oil States proposed that the court impose a lesser sanction, such as: (1) the dismissal of Brown's constructive discharge claim; (2) the payment of Oil States' legal fees and costs for drafting the motion for sanctions; or (3) the admission of a fraud finding at trial. In Brown's opposition to the motion for sanctions, Brown acknowledged that he "testified in this proceeding that he quit because the harassment was compelling" and "testified in [the motor vehicle accident] case that he quit because of injuries suffered in that accident." Based on this contradictory testimony, Brown conceded that his constructive discharge claim should be dismissed but argued that dismissal of both counts would be too harsh a remedy.

4

No. 10-31257

On August 26, 2010, the magistrate judge issued her report and recommendation (the "Report"), recommending that Brown's complaint be dismissed with prejudice. The Report stated that "Brown has been caught lying under oath" and that "[h]e committed perjury in one or perhaps both of the depositions." The magistrate judge noted that Brown made no attempt to offer the "truth" after Oil States revealed his contradictory testimony. The Report explained that, due to the conflicting testimony, "there is no factual basis for a constructive discharge claim," and recommended the dismissal of the claim.

Next, the Report addressed Brown's argument that the dismissal of his racial harassment claim would be too severe a remedy. The magistrate judge cited *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), for the proposition that "outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Id.* at 45 (citations and internal quotation marks omitted). Regarding the lesser sanction of attorney's fees, the magistrate judge noted that because Brown was proceeding IFP, "[a]n assessment of attorneys' fees is meaningless because Brown cannot pay them." The Report next cited *Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004), where the First Circuit affirmed the dismissal of a plaintiff's complaint because the plaintiff had committed fraud by failing to provide pertinent medical information in his deposition. The Report quoted *Hull*'s reasoning that plaintiff's "deceits were substantial, deliberate, and went to the heart of the case. *And since not everyone will be caught, the penalty needs to be severe enough to deter*. In the choice of remedy, there was no abuse of discretion. . . ." *Id.* at 102-03 (emphasis added).

The magistrate judge reasoned that "[i]f Brown retains his claim for racial harassment, he suffers no penalty for perjuring himself in this action," since his constructive discharge claim (which Brown proffered up for dismissal) was effectively dead in the water as a result of his testimony in the *State Farm* case. Emphasizing the deterrence rationale in *Hull*, the magistrate judge noted that

No. 10-31257

"not everyone like Brown will be caught.  When it is discovered, the penalty needs to be severe enough to deter such conduct."  Furthermore, the magistrate judge stated that the "proper administration of justice depends on people testifying truthfully under oath."   The Report concluded with the recommendation that the district court should grant Oil States' motion for sanctions and dismiss Brown's complaint with prejudice.

On October 25, 2010, Brown filed his objections to the Report.  Brown asserted that the magistrate judge erred in recommending the dismissal of both counts of his complaint and that Brown's attorney erred in admitting Brown's perjury and consenting to the dismissal of the constructive discharge claim. Brown asked the district court to hold an evidentiary hearing to take his testimony regarding his conflicting deposition testimony, as this new testimony would show that Brown "did not intentionally lie."  Brown asserted that his attorney in the *State Farm* proceeding advised him not to mention his Title VII case and that this advice "led a somewhat naive and simple plaintiff astray . . . in the present case . . . about not testifying in one case about the other."  Brown explained that "[t]he reason that this evidence was not originally submitted was due to the inability of the plaintiff to articulate his reasons for the conflicting testimony . . . ."

On November 17, 2010, the district court held a hearing on Brown's objections to the Report.  Although Brown has requested a hearing, neither Brown nor his counsel appeared.  On the same day, the district court adopted the Report as its opinion and issued a final judgment dismissing Brown's complaint with prejudice.

Apart from recommending the dismissal of Brown's complaint in the Report, the magistrate judge also issued a sanction order against Brown's attorney, Courtney Wilson ("Wilson"), on September 17, 2010.  The magistrate judge found that Wilson violated Rules 2.1 and 3.2 of the Rules of Professional

6

No. 10-31257

Conduct for his conduct at a settlement conference.  The order stated that Wilson should deliver a check of $500 to the Clerk of the Court or show cause in writing why he should not be required to make such a payment.

In response to the sanction order, Wilson did not object to the sanction order itself but instead filed a motion for recusal of the magistrate judge.  Wilson stated that there were disputed facts between Wilson and the judge regarding what was said in the instant and previous settlement conferences.  Wilson argued that recusal was required "based on [the judge] having personal knowledge of disputed facts."  The magistrate judge denied the motion for recusal, reasoning that "[k]nowledge of disputed facts learned from judicial proceedings generally will not require recusal."  Wilson filed a motion for review of the magistrate judge's denial of his motion for recusal, and the district court denied this motion for review.

Brown and Wilson raise three issues on appeal, arguing that: (1) it was an abuse of discretion for the district court to dismiss both counts of Brown's complaint; (2) it was an abuse of discretion for the district court to deny an evidentiary hearing on Brown's contradictory testimony; and (3) it was error for the magistrate judge not to recuse herself from Wilson's show cause matter.

## II. Discussion

### A.  Dismissal of Brown's Complaint

We review a district court's imposition of sanctions for an abuse of discretion.  *See Chambers*, 501 U.S. at 55; *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993).  "[T]he question we address is not whether this Court, in its own judgment and as an original matter, would have imposed any of these sanctions. Rather, we only ask whether the district court abused its discretion in doing so." *Topalian*, 3 F.3d at 934 (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 642 (1976)).  We review the district court's factual findings underlying

the imposition of sanctions for clear error. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010).

We have noted that dismissal with prejudice "is an extreme sanction that deprives a litigant of the opportunity to pursue his claim." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995) (citation and internal quotation marks omitted). Therefore, because the district court here imposed "the severest possible sanction," our review on appeal is "'particularly scrupulous.'" *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 749 (5th Cir. 1987) (citation omitted); *see also Topalian*, 3 F.3d at 936 (noting that if the sanction imposed is severe, this court conducts a more "rigorous" review under the abuse of discretion standard).

Although "the facts of each case largely determine the appropriateness of dismissal," several general principles from our precedents guide our review. *Brinkmann*, 813 F.2d at 749. Under this circuit's precedent, we ordinarily will affirm a dismissal with prejudice only if: (1) there is "a clear record of delay *or* contumacious conduct by the plaintiff," and (2) "lesser sanctions would not serve the best interests of justice." *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir. 1985) (citation and internal quotation marks omitted). "The district court's consideration of lesser sanctions should appear in the record for review of the court's exercise of its discretion." *Id.* at 1159 (citation omitted). Additionally, we consider dismissal with prejudice to be a more appropriate sanction when the objectionable conduct is that of the client, and not the attorney. *See Brinkmann*, 813 F.2d at 749.

On appeal, Brown argues that the district court's dismissal of his entire complaint was too severe a sanction and that the district court erred in failing to consider alternative lesser sanctions. Brown contends that the district court did not consider the lesser sanction of a "fraud finding" to be admitted into evidence at trial. Furthermore, Brown asserts that his contradictory testimony

No. 10-31257

did not implicate count one of his complaint—the racial harassment claim—and that therefore the district court should not have dismissed this claim. Applying the general principles outlined above, we reject Brown's arguments and hold that the district court did not abuse its discretion in dismissing Brown's complaint.

We first address whether Brown's conflicting testimony constitutes contumacious conduct to justify the dismissal of his complaint. "[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead, it is 'the *stubborn resistance to authority*' which justifies a dismissal with prejudice." *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988) (emphasis added) (citation omitted). Before the start of his two depositions, Brown took an oath to tell the truth. As the district court correctly observed, "This [oath] is not trivial. The proper administration of justice depends on people testifying truthfully under oath." We agree with the district court's determination that Brown defied this oath and committed perjury.

In his personal injury lawsuit, Brown testified under oath that he left his job at Oil States *solely* because of his back pain related to an accident. In the instant Title VII lawsuit, Brown testified under oath that he quit his job at Oil States *solely* because of racial harassment and life-threatening activity related to the harassment. This explicitly contradictory deposition testimony leads only to the district court's conclusion: "Brown [was] caught lying under oath." The circumstances underlying Brown's perjury are especially concerning: Brown failed to mention racial harassment in the first deposition to bolster his personal injury claim, and Brown failed to mention his back pain in the second deposition to bolster his Title VII claim. Brown deceitfully provided conflicting testimony in order to further his own pecuniary interests in the two lawsuits and, in doing so, undermined the integrity of the judicial process. Through his perjured

No. 10-31257

testimony, Brown committed fraud upon the court, and this blatant misconduct constitutes contumacious conduct.

We next address Brown's argument that the district court abused its discretion by failing to consider lesser sanctions. Under this circuit's precedent, we have required that the district court use "the least onerous sanction which will address the offensive conduct." *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 899 (5th Cir. 1997); *see also Topalian*, 3 F.3d at 937 (holding that district courts must show that "sanctions are not vindictive or overly harsh reactions to objectionable conduct, and that the amount and type of sanction was necessary to carry out the purpose of the sanctioning provision") (citation omitted). Further, a district court's dismissal of an action with prejudice is "appropriate only if its deterrent value cannot be substantially achieved by use of less drastic sanctions." *Brinkmann*, 813 F.2d at 749 (citation and internal quotation marks omitted).

In the instant case, the district court did consider several other lesser sanctions, but concluded that these sanctions would not be appropriate to remedy Brown's misconduct. First, the district court rejected a monetary sanction, because Brown was proceeding IFP and could not afford to pay attorney's fees.[2] Second, the district court considered another lesser sanction—

---

[2] Brown argues that the district court's rejection of a monetary sanction leads to an unfair result and denies him due process and equal protection because it suggests that "a paying plaintiff may buy himself out of a dismissal, but the IFP plaintiff will suffer dismissal." We reject Brown's argument, as this court has previously considered a plaintiff's IFP status in determining that a monetary sanction would not be an appropriate and effective sanction. *See Davila v. Price*, No. 96-40910, 1997 WL 681054, at *2 (5th Cir. Oct. 6, 1997) ("[W]e recognize that the majority of the lesser sanctions available to a district court are unlikely to create the same incentive to comply in a litigant who proceeds *in forma pauperis*, and is therefore essentially judgment proof, than in the average litigant who pays her own way in court."); *cf. Burns v. Glick*, 158 F.R.D. 354, 356 (E.D. Pa. 1994) (holding that dismissal with prejudice was the only appropriate remedy where IFP plaintiff could not "pay any costs or fees assessed against him").

dismissing only Brown's constructive discharge claim.  As the district court noted, Brown's perjured testimony had effectively killed that claim.  As a result, the district court reasoned that "if Brown retains his claim for racial harassment, he suffers no penalty for perjuring himself in this action."

The district court then concluded that dismissal of the entire complaint with prejudice was the only appropriate sanction commensurate with Brown's serious misconduct.  The district court also explained that this severe sanction was necessary under deterrence and institutional integrity rationales.  Under the deterrence rationale, the court explained that "not everyone like Brown will be caught," so "when [perjury] is discovered, the penalty needs to be severe enough to deter such conduct."  Regarding the protection of the judicial process against abuse, the court stated that "[t]he proper administration of justice depends on people testifying truthfully under oath."

Brown specifically argues that the district court abused its discretion by failing to consider and impose the "fraud finding" sanction that Oil States proposed as an alternative in its sanctions motion.  Although the district court did not explicitly address this lesser sanction in its opinion, we find that the court implicitly rejected this sanction as inappropriate because it would not effectively punish Brown's serious misconduct.  The district court clearly stated that allowing Brown to proceed to trial would in effect be "no penalty" for his perjury.  Thus, under the district court's reasoning, a "fraud finding" sanction would be too lenient of a sanction and ineffective as a deterrent, as it would still allow Brown to proceed to trial.

After analyzing the reasoning in the district court's opinion, we reject Brown's contention that the district court erred by failing to consider lesser sanctions and to impose the least onerous sanction appropriate.  The district court did consider lesser sanctions and explicitly found that dismissal of the

complaint in its entirety was the only effective sanction in this case.[3]  Under these circumstances, we cannot say that the district court abused its discretion. *See Brinkmann*, 813 F.2d at 750 (affirming the district court's dismissal with prejudice where the district court "specifically found . . . that dismissal was the only effective sanction in this case," as the plaintiff was "not likely to be brought into line by lesser sanctions"); *Sturgeon*, 778 F.2d at 1160 (affirming dismissal with prejudice where "[t]he district court considered lesser sanctions and found them futile"); *see also Hull*, 356 F.3d at 103 (affirming dismissal of a complaint where the district court determined that "dismissal was 'commensurate' with [plaintiff's] conduct" and recognized "the need to deter 'this type of behavior from recurring'"); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001) (affirming dismissal with prejudice where plaintiff "gave perjurious answers during her deposition and in her interrogatory responses" and the district court "found that dismissal was the only sanction that would effectively punish [plaintiff] . . . and protect the integrity of the proceeding").

Brown also asserts that the district court abused its discretion in dismissing his racial harassment claim because he argues that this claim was not directly implicated by his contradictory deposition testimony.  Brown contends that because there was no direct nexus between his perjured testimony and his racial harassment claim, the district court erred in dismissing this count of his complaint.  We reject Brown's contention.  First, Brown cites to no Fifth Circuit precedent that requires a direct nexus between the objectionable conduct

---

[3] In *Gonzalez*, 117 F.3d 894, a panel of this court reversed the district court's dismissal of a complaint for perjury because other "available possible sanctions would have had same or similar practical effect as to plaintiff's egregious actions and result as the dismissal." *Id.* at 899.  Furthermore, the panel concluded that the lesser sanctions "would have addressed the offensive behavior with equally deterrent effect." *Id.* at 900.  In the instant case, the district court reasoned that the dismissal of the entire complaint was necessary for the deterrence of perjury and that allowing Brown to proceed to trial would not have been an effective deterrent. We cannot conclude that the district court abused its discretion in coming to this conclusion.

and the sanction. Second, although the district court did impose the harshest sanction, as explained above the court came to a reasoned conclusion that dismissal of Brown's complaint with prejudice was the only effective, appropriate sanction commensurate with Brown's serious misconduct. Finally, Brown's perjured testimony did cast doubt on whether he was subjected to racial harassment at Oil States, given his failure to mention racial harassment as a reason for leaving his job in the *State Farm* deposition. Brown's "deceits were substantial, deliberate, and went to the heart of the case," and the district court did not abuse its discretion in dismissing his racial harassment claim. *Hull*, 356 F.3d at 102-03.

In conclusion, after reviewing the record, we do not find that the district court abused its discretion in deciding to dismiss Brown's complaint with prejudice. Brown plainly committed perjury, a serious offense that constitutes a severe affront to the courts and thwarts the administration of justice. The district court determined that the dismissal of Brown's entire complaint was the only effective, appropriate sanction to remedy this misconduct and to deter future similar misconduct. Bolstering the court's conclusion is the fact that Brown, and not his attorney, committed the sanctionable conduct, which makes the harsh sanction of dismissal with prejudice all the more appropriate. We find that the district court's dismissal of Brown's complaint with prejudice was within the ambit of the district court's discretion.

## B. Denial of the Evidentiary Hearing

We review the district court's denial of an evidentiary hearing for abuse of discretion. *See Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998). In his objections to the Report, Brown requested that the district court conduct an evidentiary hearing so that Brown and his attorney in the *State Farm* proceeding–Brown had a different attorney in the *State Farm* proceeding than he had in this case–could explain the cause of his conflicting deposition

13

testimony.　Brown contended that this testimony would show that he simply followed advice from his *State Farm* attorney and that he did not intentionally lie.　Brown makes no effort to explain why he and his attorney in this case failed to show at the hearing held by the district court to address objections to the magistrate judge's report. At the close of that hearing, the district court adopted the Report as its opinion  and entered judgment dismissing Brown's complaint with prejudice. Brown's argument that the district court failed to hold a hearing is meritless.

*C.  Denial of the Motion for Recusal*

We review a denial of a motion to recuse for abuse of discretion.  *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).  "The judge abuses his discretion in denying recusal where 'a reasonable man, cognizant of the relevant circumstances surrounding [the] judge's failure to recuse, would harbor legitimate doubts about that judge's impartiality.'"  *Id.* (citation omitted).

On appeal, Wilson contends that the magistrate judge violated 28 U.S.C. § 455.  Particularly, Wilson points to the provisions that state that the judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," § 455(a), and that the judge "shall also disqualify himself . . . [where he] has been a material witness concerning [the matter in controversy]."  § 455(b)(2).  Wilson argues on appeal that the magistrate judge was a material witness to the settlement proceeding and that there were disputed facts between Wilson and the magistrate judge regarding what was said during the settlement conference.[4]　Wilson therefore asserts that the magistrate judge should have recused herself from the show cause matter.

---

[4] Wilson's argument also implicates 28 U.S.C. § 455(b)(1), which states that a judge shall disqualify himself when he has "personal knowledge of disputed evidentiary facts concerning the proceeding."

No. 10-31257

We hold that the court did not abuse its discretion in denying Wilson's motion for recusal of the magistrate judge. The only facts that the magistrate judge knew about Wilson's conduct were learned from judicial proceedings in the instant case and in previous cases. We have stated that "[a]s a general rule, for purposes of recusal, a judge's 'personal' knowledge of evidentiary facts means 'extrajudicial,' so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification." *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) (citation and internal quotation marks omitted); *see also* 13D CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3543 (3d ed.) ("[K]nowledge of disputed facts learned from judicial proceedings generally will not require recusal."). Furthermore, we have explained that "[o]pinions formed by the judge that are based on . . . events occurring during the proceedings do not constitute a basis for recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Conkling*, 138 F.3d 593 (citation and internal quotation marks omitted). Here, there is no indication of a deep-seated antagonism on the part of the magistrate judge toward Wilson. We conclude that a reasonable person would not question the magistrate judge's impartiality in this case. The court did not abuse its discretion in denying Wilson's motion for recusal.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Brown's complaint with prejudice and the district court's order denying Wilson's motion for recusal of the magistrate judge.