# United States Court of Appeals
## For the First Circuit

No. 11-1393

EUGENE STARSKI,

Plaintiff, Appellant,

v.

ALEXANDER KIRZHNEV and DAI SYNDITRADE LIMITED,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,[*] Associate Justice,
and Thompson, Circuit Judge.

Seth S. Stoffregen for appellant.
Peter Charles Horstmann with whom Partridge, Ankner &
Horstmann was on brief for appellees.

June 20, 2012

---

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>.** This is an appeal by Eugene Starski, who asserted claims in the district court against Alexander Kirzhnev (and Kirzhnev's company DAI Synditrade ("DAI")) growing out of a commercial dispute. The merits of the claims are not central to the issues raised on appeal but some understanding of Starski's lawsuit and version of events is needed to provide context.

Starski claims that he had a business relationship with a Vietnamese enterprise called Sovico and, in cooperation with it, sought to facilitate a $1.5 billion debt swap between the governments of Vietnam and the Russian Federation; that Starski joined with Kirzhnev, said to have high level contacts in the Russian government, to set up the swap; that Kirzhnev agreed to pay Starski a substantial commission; that $1 billion of the debt swap was completed and $100 million in commissions paid to some combination of Kirzhnev, DAI, and Sovico; but that Kirzhnev reneged and paid Starski nothing.

In January 2005, Starski filed suit in the district court in Massachusetts against both Kirzhnev and DAI seeking at least $25 million in damages. Starski asserted diversity jurisdiction, claiming that the two men lived in the United States and were citizens of different states. The complaint set forth claims for conversion, breach of contract, unjust enrichment, fraud and unfair business practices in violation of Massachusetts' Chapter 93A,

Mass. Gen. Laws ch. 93A, § 11. Proceedings were protracted; partly this was because Kirzhnev was at the time imprisoned in Russia, seemingly after conviction for bribing an official in that country's Ministry of Finance, although the timing is unclear and records related to the conviction are a subject of dispute.

As the case proceeded, the district court disposed of certain of the claims on summary judgement; and finally in 2010, a trial was held focusing on Starski's factual claim that Kirzhnev had entered into and then breached a contract promising compensation to Starski if the debt swap was completed. At the close of trial, the jury found specially on the verdict form that no such contract had been proved by Starski and therefore did not reach the questions of breach or damages.

Starski's appeal raises three questions, the first of which is a claim that the district court abused its discretion in excluding evidence. Specifically, Starski says the court erred in precluding him from impeaching Kirzhnev through evidence of Kirzhnev's convictions in Russian court for bribery and forgery,[1]

---

[1]Starski attached to his motion in limine an original and purported English translation of a Russian document that he said was evidence of Kirzhnev's convictions. The English version had a heading stating "Enquiry" and said: "This is to confirm that Kirzhnev Alexander . . . was convicted by Moscow City Court and sentenced to 4 years and 6 months . . . under articles: 291, part 1 (bribing government official) 322, part 1 (illegal sovereign border crossing) 327, part 1 and 3 (forgery of documents and knowingly using forged documents)." It was signed by "Secretary of the court: Panova E.V."

and in barring Starski from cross-examining Kirzhnev about documents that were seized or destroyed during his arrest by Russian authorities for those same crimes.

Both sides had sought a ruling in limine, and the district judge at that time ruled that the evidence was excluded "without prejudice to [Starski] to provide a fuller showing in the context of the trial itself" that, "assuming it is authenticated," the evidence was admissible for impeachment purposes. The court told Starski he would have to provide "something that gives me some degree of security with respect to the integrity of Russian criminal process in this area."

At trial, Starski attempted to cross-examine Kirzhnev about documents seized or destroyed during his arrest by Russian authorities; the court ruled that Starski could ask whether Kirzhnev possessed the items but could not inquire further because "no showing regarding the convictions in Russia . . . satisf[ies] me that the manner in which they were obtained was something that should be recognized in the United States[, s]o, I am keeping it out absent some showing."

On a new trial motion, the district court held that the evidence of Starski's Russian convictions was insufficiently authenticated: the document was not an official record of conviction but a response to an inquiry (presumably by Starski); the translated version indicated a place for an official stamp but

the original contained no such stamp; and it was not supported by a certification of the genuineness of the signature and position of the document's signer. Starski v. Kirzhnev, No. 06-10157-DPW, at *4-6 (D. Mass. Mar. 15, 2011), 2011 WL 923499.

The district court in its post-trial ruling also held the evidence inadmissible, regardless of its authenticity, because "recent criticisms of the Russian criminal justice system" called the fundamental fairness of the proceedings underlying Kirzhnev's convictions into question and, despite being invited to do so, Starski offered nothing to support the fairness of the convictions at issue or the Russian criminal justice system generally. Starski, 2011 WL 923499 at *6.

Central to the merits of the case was whether Kirzhnev had contracted with Starski to pay a commission--Starski said yes and Kirzhnev no. Although Starski offered documentary evidence of a contract offer, Kirzhnev said the document or at least his purported signature was a forgery. Thus, evidence of Kirzhnev's credibility was certainly material; and a conviction within the prior ten years for a crime whose elements include a "dishonest act or false statement" is not subject to ordinary Rule 403 balancing and "must be admitted" for impeachment purposes. Fed. R. Evid. 609(a)(2); United States v. Tracy, 36 F.3d 187, 192 (1st Cir. 1994), cert. denied, 514 U.S. 1074 (1995).

However, the document showing a conviction must be authenticated, and absent testimony (e.g., from a court official), a foreign document is self-authenticating if (1) signed or attested by a person who is authorized to do so, and (2) accompanied by a final certification--either by certain officials enumerated in the rules or pursuant to treaty--of the genuineness of the signature and official position of the signer or attester. Fed. R. Evid. 902(3); see also Fed. R. Civ. P. 44(a)(2). Here, Starski tendered no such certification.

Starski says that the court failed to warn him about authentication concerns when it ruled on the motion in limine; but at oral argument in this court Starski's counsel conceded that authentication issues were raised during the motion hearing. In any event, the authentication requirements are set forth in the Federal Rules of Evidence and it is not the court's job to remind counsel of the need to comply with them. Nor has the discrepant missing stamp been adequately explained.

A savings clause in Rule 902 permits the court to relax the authentication requirements, but one condition is that the party so requesting show that it was "unable to satisfy" the rule's requirements for authentication "despite . . . reasonable efforts." United States v. De Jongh, 937 F.2d 1, 4 (1st Cir. 1991) (quoting Fed. R. Civ. P. 44 advisory committee note). Starski was able to get other documents properly authenticated; and, if he made a

"reasonable efforts" proffer below, he does not develop that claim on appeal.

The whole controversy has an opéra-bouffe air of unreality. As Starski points out, Kirzhnev never denied to the court that he had been convicted of bribery, although the jury was not told of the fact. Conversely, the jury likely fathomed just what Kirzhnev was doing to earn his own commission, whether or not he was formally convicted of bribery; whether or not the jury drew a negative inference from the conduct is unclear but, if not, it is unclear that a formal conviction would alter its view.

Indeed, a trial judge untroubled by doubts about the legal regime underpinning the conviction might well have admitted the document and (we need not prolong the discussion) could likely have found bases for doing so. For this somewhat more effort from Starski in complying with the rules and attempting the requisite showing would have been useful. In any event, the technical authentication grounds for excluding the conviction were adequate and we do not reach issues touching on Russia's legal regime.

Starski also argues that he should have been allowed more latitude to cross-examine Kirzhnev as to the loss or destruction of Kirzhnev's passport at his arrest, but Starski's counsel admitted that the questioning would--and was in part designed to--introduce inadmissible evidence of Kirzhnev's alleged crime through a "back

door" reference to his arrests. The district court fairly concluded that such inquiries failed the Rule 403 balancing test.

Starski's second principal claim on this appeal is that the district court abused its discretion in failing to impose sanctions on Kirzhnev for misconduct in stalling the proceedings. Although Starski filed suit in January 2006, progress in the litigation was delayed, first by service of process problems apparently owing to Kirzhnev's incarceration, and then by a series of incidents due to Kirzhnev's travels abroad, failure to communicate with local counsel, and general lack of diligence.

Most important, on February 17, 2010--five days before trial was set to begin--Kirzhnev filed an emergency motion requesting a continuance on account of an emergency hospitalization for back surgery in Russia. After a hearing, the district court reluctantly granted the continuance, although it also requested medical records to support Kirzhnev's story. Kirzhnev then submitted two unsworn, unauthenticated letters signed by a Dr. A.V. Sokolov--but with dissimilar-appearing signatures--purporting to confirm Kirzhnev's hospitalization and surgery.

Starski moved for sanctions against Kirzhnev, submitting (among other things) a certified, authenticated letter from a member of the Russian Duma reporting that the hospital where Kirzhnev claimed he had surgery had no record of him as a patient at the relevant time. Kirzhnev then testified that he had been at

the hospital for four or five days but had no back surgery. Starski asked the court to enter judgment against Kirzhnev as a sanction for misleading the court, but the judge declined to rule on the motion before trial.

After the jury rejected Starski's claims, the district court allowed Kirzhnev to submit two unsworn statements from friends, one a Duma representative and the other his family's attorney, purporting to confirm Kirzhnev's stay in the hospital and to describe visits to him there, although these hardly allayed all doubts.[2]  Starski submitted more certified documents from a Duma representative stating that no Dr. Sokolov worked at the hospital in question during the relevant period.

Ultimately, the district court denied Starski's motion for sanctions.  Starski, 2011 WL 923499 at *11.  Insofar as sanctions were sought under Rule 11, the court rejected Starski's request for failure to comply with the rule's "safe harbor" provision requiring an opportunity for the opposing party to withdraw the offending submission; but the court proceeded to the merits by construing the request as one also invoking the court's inherent powers.  Id. at *9 (citing Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

_____

[2]The letters both described purported visits to Kirzhnev in the hospital but the two letters provided inconsistent dates for when Kirzhnev supposedly entered the hospital--one said February 15, and the other February 16, while Kirzhnev himself said February 17 in his motion to supplement the record.

Without deciding whether Kirzhnev's actions amounted to a fraud on the court, the judge denied the sanction of judgment against Kirzhnev because any delays resulting from fraud were not unduly prejudicial to Starski. Because the questions surrounding Kirzhnev's hospitalization were "immaterial to the merits of the dispute" and did not "generate an unfair resolution of the case," the court held there "was no manifest injustice at trial." Starski, 2011 WL 923499 at *10-11.

The court did, however, express "concern[] that Kirzhnev appears to have procured potentially perjurious and fraudulent statements designed to impede the Order setting this case for trial on February 22, 2010," and ordered the parties to show cause why the court should not refer the case to the U.S. Attorney's office for investigation of possible contempt charges under 18 U.S.C. § 401(3). Starski, 2011 WL 923499 at *11; Starski, No. 06-10157-DPW (Mar. 15, 2011) (order to show cause), ECF No. 126. Kirzhnev's counsel advised us at oral argument that the matter was referred to the U.S. Attorney's Office but nothing (as of yet) has resulted.

In sanctioning "fraud on the court," consideration is normally given to multiple factors-for example, the egregiousness of the conduct, prejudice to the opposing party, the general policy favoring adjudication on the merits, the need to maintain institutional integrity, and deterrence of future misconduct. Aoude, 892 F.2d at 1118, 1120 n.3; Hull v. Municipality of San

-10-

<u>Juan</u>, 356 F.3d 98, 102-03 (1st Cir. 2004).  Not surprisingly, the district court's judgment is reviewed with considerable deference, <u>Mulero-Abreu</u> v. <u>P.R. Police Dep't</u>, 675 F.3d 88, 91 (1st Cir. 2012).

The sanction Starski sought for the alleged fraud was a default judgment on the merits against Kirzhnev, along with costs and attorneys' fees.  Because the judge reserved judgment pending the trial, this sanction post-verdict would have entailed an award to Starski on a contract claim that a jury had just rejected on the merits.  And, contrary to Starski's position on this appeal, there is no showing that the delay in the trial had any likely effect on the verdict.  In fact, Starski had not opposed the continuance based on the alleged hospitalization.

Starski argues that, if the trial had gone forward, he might have been able to produce a witness, later unavailable, to dispute prior testimony of Kirzhnev as to whether or not his son lived in Connecticut between 2005 and 2007.  This issue was tangentially relevant to a pre-trial dispute about personal jurisdiction, which Kirzhnev had ultimately conceded; was not germane to the merits; and extrinsic testimony if offered to impeach would have been excludable as collateral.  <u>United States</u> v. <u>Beauchamp</u>, 986 F.2d 1, 3 (1st Cir. 1993).

Further, Starski did not seek at trial to question Kirzhnev about his supposed misstatement of his son's residence.  Questioning Kirzhnev would not have offended the rule against

extrinsic evidence on collateral matters.  Whether it would have been permissible under a stipulation between the parties resolving personal jurisdiction in Starski's favor but limiting evidence of the dispute is less clear; but any limitations that applied would have applied as well to an independent witness called by Starski.

Finally, to resolve clearly the question of whether Kirzhnev had been in the hospital could easily have involved complicated further proceedings involving foreign witnesses and documents after an already protracted case that had finally been resolved.  Fiat justitia ruat caelum--let justice be done though the heavens fall--is an important legal maxim, but it includes the need to move on to the next case and provide justice to the next litigant in line on a crowded docket.

Starski's third and last claim of error requires little discussion. Starski says that Kirzhnev's company, DAI Synditrade, was improperly dismissed from the lawsuit on summary judgment entered by the district judge prior to trial.  Our review is de novo, Guay v. Burack, 677 F.3d 10, 15 (1st Cir. 2012), but the summary judgment decision was manifestly harmless given Starski's theory of DAI Synditrade's liability--that both Kirzhnev and the company were bound by the same document--since the jury ultimately rejected it as a valid contract.

In other words, Starski made no claim to evidence implicating only the company or establishing a separate contract

that could cause a jury to reach a different result as between Starski and the company.  Thus, the result would necessarily have been the same even if the company had remained a co-defendant.

Affirmed.