# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2026

Lyle W. Cayce
Clerk

No. 24-60386

———————————

Daphnie Newman Boudy,

*Plaintiff—Appellant,*

*versus*

McComb School District; McComb School District Board of Trustees; James Harvey, former Interim Principal now Assistant Principal and in His Official Capacity,

*Defendants—Appellees,*

———————————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:23-CV-30

———————————————————————————

Before Smith and Richman, *Circuit Judges.*[*]
Priscilla Richman, *Circuit Judge*:

Daphnie Newman Boudy filed this discrimination lawsuit after she resigned from her employment with McComb School District in McComb, Mississippi. She alleges to have suffered retaliation after ending a consensual

———————————————

[*] Judge Dennis was a member of the panel that heard this case but took inactive status after the case was submitted. This matter is decided by a quorum under 28 U.S.C. § 46(d).

sexual relationship with a school administrator.  Boudy appeals the district court's sua sponte order that she undergo a mental examination at her own expense, the dismissal of her suit with prejudice, and an order to pay the school district's attorneys' fees.  We vacate and remand in part and affirm in part.

## I

Boudy, a former employee of the McComb School District, filed this employment discrimination lawsuit in April 2023.  Boudy alleges she suffered retaliation forcing her to resign after attempting to end a "reluctantly agreed to [] 'consensual' sexual relationship" with James Harvey, a school administrator, "in exchange for ADA accommodations and job security."  She alleges such discrimination caused a "mental health crisis" and "increased anxiety and panic attacks," along with numerous other adverse impacts on her physical and mental health.

Boudy litigated in the district court both with and without counsel.  While she was proceeding without counsel, the magistrate judge issued a case management order, which stated:

> The parties have agreed that defendant may obtain a Fed.R.Civ. P. 35 (L.U.Civ.R. 35) medical examination of the plaintiff (within subpoena range of the court) by a physician who has not examined the plaintiff, and that defendant may arrange the examination without further order of the court. The examination must be completed in time to comply with expert designation discovery deadlines.

Boudy objected to the order.  She "agree[d] with Defendants' medical exam, but only with further orders from the Court."  The magistrate judge rejected Boudy's objection since "the parties were in agreement concerning the Defendants' ability to obtain a Fed. R. Civ. P. 35 medical examination of Boudy."

Shortly after the magistrate judge issued this order, Boudy moved to appoint counsel because her "health and mental health [were] severely deteriorating." She stated she could "contribute to discounted attorney fees," but only had "monthly fixed Social Security Disability Income (SSDI) of $946.00" and was unable to work. Boudy also asserted that she had a "new medical diagnosis" and was experiencing "severe anxiety attacks, insomnia, poor concentration, poor memory as of June 2023 . . . paranoia as people are following her and trying to set her up, hearing voices . . . and nightmares that [she was] being hunted, chased and shot at by [Harvey]." She attached a pharmacy receipt listing her various prescriptions and a Social Security Administration function report detailing her ailments. The magistrate judge denied Boudy's motion for counsel, explaining that "[Boudy] [was] able to adequately present her case. [Boudy] has filed a complaint, motions, responses, and replies throughout this lawsuit. [Boudy] has also propounded interrogatories, requests for admissions, and numerous subpoenas *duces tecum*." The magistrate judge also stated that "the Court [did] not find [Boudy's] health to be an exceptional circumstance here, especially given [her] ability to adequately represent herself throughout this litigation."

Two attorneys entered appearances on behalf of Boudy not long after the magistrate judge's denial of her motion to appoint counsel. However, about five months later, Boudy's attorneys moved to withdraw due to serious disagreements that had arisen. Boudy emailed the court stating that she "received help from the Federal Pro Se Help Desk" and would proceed pro se.

The district court subsequently granted the school district's motion to dismiss for insufficient service. With the help of the Federal Pro Se Help Desk, Boudy moved for reconsideration. Concluding that "dismissal of [the]

case [was] improper at this stage," the court granted her motion and her case was reinstated.

Days later, Boudy filed several motions, including motions for appointment of counsel, for an extension of time to perfect service, and to disqualify the magistrate and district judges, all of which stated she received "assistance from the Federal Pro Se Help Desk" and that she "has a disability and suffers with severe, chronic mental illness." Boudy attached medical records dated February 1, 2024 to her motion for appointment of counsel that provided she was being treated for PTSD, bipolar disorder, and schizoaffective disorder. Boudy also requested to stay proceedings pending appointment of counsel.

On May 30, 2024, the district court *sua sponte* stayed the case and ordered Boudy to undergo a mental examination at her own cost, as the court was concerned about the "mental status of [Boudy] and the validity of the outcome, if [Boudy] is determined or claims to be incompetent." "The Court [found] that [Boudy's] mental competence is in controversy and good cause exists for a mental evaluation under L.U. Civ. P. 35 to determine [Boudy's] mental capacity to understand the nature of her lawsuit, and to represent herself adequately." The Court ordered (1) the examination to be done within thirty-five days by a psychologist or psychiatrist, (2) for the parties to consult with one another to agree upon an examiner within five days, and (3) for "[a]ll costs of the examination [to] be borne by [Boudy]."

On June 3, 2024, Boudy filed a hand-written response stating that she was unable to comply with the order due to her health and monthly fixed income. She contended that she was "a competent witness, competent to understand these legal proceedings and her case," but was "NOT competent to represent herself in these proceedings and cannot proceed as pro se." She

also attached medical records dated May 16, 2024, that represented she was still being treated for her mental health issues.

Boudy did not confer with the school district within five days of the examination order. On the morning of June 6, 2024, she emailed the court and school district about a second mandamus petition she had filed seeking to disqualify the judges. The court responded that morning, and invited the parties to provide their availability for a telephone conference the same day. The Defendants' attorneys responded that they were available. Boudy responded by automatic reply, stating "due to a family emergency, [she was] out of town until further notice. Cellphone and internet services are limited, so please leave a voicemail" at the designated phone number. The court called the phone number. Boudy did not answer, so the court left a voice message instructing her to respond to the court's examination order.

Hearing nothing from Boudy, the court emailed the parties again on June 10, still requesting a telephone conference. An attorney for the school district responded. Boudy did not respond, so the court, for a second time, called the designated phone number and left another voicemail with instructions to call the court. The court then scheduled a telephone conference for June 12. Boudy did not join the call, but one of the school district's attorneys did. After the call, the court scheduled a show-cause hearing for June 18, ordering Boudy "to show cause why she has not participated or responded to the Court's orders in any way," and warned that Boudy "has signed numerous pleadings, motions, and other papers" and "pursuant to Rule 11 of Federal Rules of Civil Procedure[,] [] could be opening herself up to sanctions for violating Rule 11." The court mailed this order to Boudy via FedEx, which made three delivery attempts. The order was ultimately returned as undeliverable, but, on June 15, FedEx left a notice about the court's attempt to contact her.

While Boudy did not join the June 12 call, Boudy did email the court and school district informing them of "unexpected Emergency Room Care . . . due to chest pain, anxiety attacks, and changes in medication management." Boudy also stated that she had a "follow-up appointment on June 18, 2024," suggesting she would be unable to attend the June 18 show-cause hearing. Boudy's email, however, did not mention the show-cause order nor the telephone conference. The Court responded to her email, stating that if she was unable "to be present at the time of [her] hearing due to sickness or a doctor's appointment, [she] must make a motion asking for a continuance."

Between June 13 and June 17, Boudy tried to call the court four times: once on June 13 at 6:49 a.m. for thirty-nine seconds; twice on June 17 at 9:30 a.m., both for three seconds; and once on June 17 at 5:05 p.m. for forty-two seconds. On June 17, the court emailed the parties to ask whether they would prefer to appear at the June 18 show-cause hearing via video. Defendants' attorneys responded. Boudy did not respond, nor did she appear at the hearing.

Because the court "had no response whatsoever" after many attempts to contact Boudy and "resources [were] being and [would] continue to be wasted as a result of [Boudy's] conduct and failure to respond to the Court and comply with said orders," the court issued a second show-cause order on June 27 and ordered Boudy to appear on July 10. The court's order recognized that Boudy's "refusal to contact the Court" about the mental examination (that she had previously agreed to) delayed her case, and "that it took [Boudy] a full year to properly complete process." Additionally, the order warned that "failure to comply with the Court's orders can result in sanctions under Rule 41(b) Federal Rules of Civil Procedure and under the Court's inherent authority to dismiss the action[] *sua sponte*."

6

No. 24-60386

On June 27, Boudy emailed the court. She reported experiencing a "recent facial shingles outbreak" that caused "blurred vision in [her] left eye" and stated she was "unable to proceed pro se." Boudy's email did not mention the second show-cause order. However, mere days later, on July 2, Boudy filed a hand-written response to the court's June 12 and June 27 show-cause orders. Boudy stated she was "unaware the Court [was] holding hearing/conferences due to . . . her being out of town on family emergency [and her] own medical emergencies" and included medical records reflecting visits to health care providers in McComb on June 12 and 17 and in Louisiana on June 18 and 28. In addition to her hand-written response, Boudy sent two emails to the district court and school district. She asked the court to "provide [her] with a Zoom Link/Notice for the July 10 show-cause hearing due to [her] Left Eye Shingles Complications and for safety reasons." The court responded in just over an hour:

> You have contumaciously ignored numerous attempts of the Court to communicate with you. The Show Cause Order directed you to be in this Court [on July 10]. I expect you to be there.

Boudy responded "Thank you for your reply but I will not file any future Motions with the Court." Boudy did not appear at the July 10 show-cause hearing. However, she subsequently filed pleadings, some of which were with the Federal Pro Se Help Desk's assistance. Specifically, Boudy moved for reconsideration of her motion to disqualify the magistrate and district judges, and renewed her motion to appoint counsel.

The school district then moved to dismiss under Rule 41(b). It also requested attorneys' fees and costs that the school district incurred from its attorneys' attending the June 12 telephone conference, as well as the June 18 and July 10 show-cause hearings, none of which Boudy attended. Boudy responded the same day. "With help from the Federal Pro Se Help Desk,"

7

Boudy maintained her contention that she was "unaware hearing[s] and conferences were being conducted from June 12, 2024 – June 18, 2024." Boudy then moved to file an amended complaint.

The district court rejected the school district's motion to dismiss because the court had yet to lift the May 30 stay. However, pursuant to Federal Rule of Civil Procedure 41(b), the court dismissed the case with prejudice on its own motion, assigning all costs to Boudy, and ordered Boudy to pay attorneys' fees and expenses in the amount of $833.46 regarding the "hearings [Boudy] refused to attend." The district court found that the actions of Boudy were "worthy of [such] sanctions." It had "been dealing with [Boudy] for well over a year," and Boudy had "continued to show contempt for [the] Court." She "refused to respond appropriately or communicate with the Court and failed to comply with the orders that she was fully aware of and simply thought that she could do as she pleased, irrespective of the orders of [the] Court." Specifically as it related to Boudy's attempt to contact the court through her three phone calls, the court stated:

> It is clear to the Court that Ms. Boudy had no intention of contacting this office since the attempts were made either before or after hours, lasting only three seconds. This clearly indicates to the Court that Ms. Boudy is attempting to establish a false paper trail showing that she was attempting to contact this office and respond to the attempts to contact her. . . . [S]he was attempting to perpetrate a fraud on this Court, claiming that she had responded as directed, when in fact, she had not.

The court concluded its order by noting that the district judge "has been on the bench for well over thirty years and has handled thousands of cases . . . and has never seen a clearer case of a party ignoring the Court's orders, showing contempt for the Court and causing waste of judicial resources and other parties' time and money."

No. 24-60386

Boudy filed a notice of appeal. The district court did not enter final judgment until the next day. Insofar as Boudy's notice suffered "the technical defect of prematurity," it "relates forward to the entry of" final judgment.[1] Boudy is ably represented by pro bono counsel in this appeal.

## II

We first consider whether the district court abused its discretion in dismissing Boudy's suit for failure to appear as directed at various hearings. "We review a district court's imposition of sanctions for an abuse of discretion,"[2] including "a Rule 41(b) dismissal for failure to comply with a court order."[3] "[T]he question we address is not whether this Court, in its own judgment and as an original matter, would have imposed any of [the] sanctions. Rather, we only ask whether the district court abused its discretion in doing so."[4] "We review the district court's factual findings underlying the imposition of sanctions for clear error."[5]

Boudy argues the sanctions were an abuse of discretion for four reasons: (A) there is not a record of delay or contumacious conduct warranting dismissal with prejudice; (B) the district court failed to consider lesser sanctions; (C) Rule 37 excludes failure to comply with an order for

---

[1] *Parrish v. United States*, 605 U.S. 376, 383 (2025) (first quoting *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 273 (1991); and then quoting 16A Wright & Miller's Federal Practice & Procedure (Wright & Miller) § 3950.5 (5th ed. 2019)); *see id.* ("[T]he technical defect of prematurity . . . should not be allowed to extinguish an otherwise proper appeal." (quoting *FirsTier Mortg. Co.*, 498 U.S. 269).

[2] *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76 (5th Cir. 2011).

[3] *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008).

[4] *Brown*, 664 F.3d at 77 (first alteration in original) (quoting *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993)).

[5] *Id.* (citing *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010)).

No. 24-60386

examination as punishable conduct; and (D) a district court cannot dismiss with prejudice when there is a substantial question about a pro se litigant's competency.

## A

Under Federal Rule of Civil Procedure 41(b), the "district court may dismiss an action for failure of a plaintiff . . . to comply with any order of court."[6] The court also "possesses the inherent authority to dismiss the action *sua sponte*."[7] While "[l]esser sanctions such as fines or dismissal without prejudice are usually appropriate before dismissing with prejudice . . . a Rule 41(b) dismissal is appropriate where there is [(1)] a 'clear record of delay or contumacious conduct by the plaintiff, and [(2)] when lesser sanctions would not serve the best interests of justice.'"[8] "Because this test is conjunctive, both elements must be present."[9] However, only one of the first element's prongs must be present—either a clear record of delay *or* contumacious conduct.[10] Furthermore, "[w]here this court has affirmed 41(b) dismissals, it has usually found one or more of the following aggravating factors: '(1) delay attributable to the plaintiff, not to his attorney, (2) actual prejudice to the defendant; and (3) delay caused by intentional

---

[6] *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988).

[7] *Id.*

[8] *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (quoting *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985)).

[9] *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014).

[10] *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir. 1988) ("Even without a clear record of delay, of course, a record of contumacious conduct . . . would satisfy the first of our two prerequisites for dismissal of a suit with prejudice under Rule 41(b).").

misconduct.'"[11] Nonetheless, an absence of aggravating factors "alone does not warrant overturning a dismissal with prejudice."[12]

We need not address Boudy's arguments regarding delay because there is a clear record of contumacious conduct here.[13] Boudy argues her conduct was not contumacious because her "lack of means, mobility limitations, mental and physical health impairments all contributed to [her] noncompliance" with the district court's orders, "as did the district court's expedient pace in issuing these orders." We disagree.

"[I]t is not a party's negligence—regardless of how careless, inconsiderate, or understandably exasperating—that makes conduct contumacious; instead it is the 'stubborn resistance to authority' which justifies a dismissal with prejudice."[14] Boudy was stubbornly resistant to the district court's authority. Boudy failed to attend three hearings: the June 12 telephone conference, the June 18 show-cause hearing, and the July 10 show-cause hearing. As for the June 12 telephone conference, between June 6 and June 11, the court sent Boudy two emails and attempted to contact her by phone twice, leaving a voicemail both times. Boudy's automatic reply to the court's June 6 email about scheduling the conference claimed she was out of town—a claim she repeated multiples times throughout this litigation—suggesting she was unable to otherwise reply. Yet, she had emailed the court earlier that same day, and medical records show that she was at least in McComb on June 12 and June 17. She also did not respond to the court's

---

[11] *Bryson*, 553 F.3d at 403-04 (quoting *Callip*, 757 F.2d at 1521).

[12] *In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021).

[13] *McNeal,* 842 F.2d at 791.

[14] *Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008) (quoting *McNeal*, 842 F.2d at 792).

June 10 email, nor did she attend the June 12 telephone conference. On the day of the conference, she did, however, send an email stating that she had an unexpected emergency room visit at 6:14 p.m.

As for the June 18 show-cause hearing—which the court scheduled after Boudy did not attend the June 12 telephone conference—the court attempted a different method of contacting Boudy: mail via FedEx. While FedEx was unable to deliver the order, it left a notice on her door on June 15 regarding the court's attempt to inform her of the June 18 show cause hearing. In addition, the court clerk responded to Boudy's June 12 email regarding her emergency room visit and follow-up appointment and informed Boudy that if she could not attend the June 18 show-cause hearing, she must move for continuance and include a "written excuse" from a physician. Boudy did not. Boudy did, however, attempt to call the court four times between June 13 and June 17, suggesting she was aware of the hearing (contrary to her claim that she was uninformed). The district court did not clearly err when it concluded that such calls were an attempt to "establish a false paper trail," given they were outside of office hours or so short in duration that it was hardly an attempt to contact the court at all.

Furthermore, in Boudy's June 27 email to the court, she claimed she was "unable to proceed pro se" due to her heath. Yet she made numerous filings with the court—including a motion to file an amended complaint—within the same month, one of which was within days of her June 27 email.

As for the July 10 show-cause order, Boudy did respond to the court's communications and requested a Zoom link to attend the hearing. After the court declined her request, Boudy refused to "file any future Motions" and then failed to appear at the July 10 show-cause hearing. Boudy's extended

course of behavior constitutes "stubborn resistance to authority."[15]  Put simply, Boudy's conduct was contumacious.[16]

## B

We consider whether "lesser sanctions" would have served "the best interests of justice,"[17] which also addresses Boudy's second argument—that the district court abused its discretion "because it never considered the adequacy of less severe sanctions, and the chosen sanctions were not justified by [Boudy's] conduct."  "[W]e have consistently emphasized that the district court should consider lesser sanctions before dismissing a case with prejudice."[18]  "[W]e cannot affirm a dismissal unless . . . the record reveals that the district court employed lesser sanctions prior to dismissal . . . that in fact proved to be futile."[19]  "[T]his court has also recognized that a district court may 'implicitly reject[]' lesser sanctions as inappropriate when it

---

[15] *Id.* (quoting *McNeal*, 842 F.2d at 792); *see Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015) ("[A] decision not to comply with the district[] court's orders shows a clear record of purposeful, contumacious conduct and amounts to [] 'the stubborn resistance to authority' justifying a dismissal with prejudice." (quoting *Millan*, 546 F.3d at 327)).

[16] *See Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835, 845 (5th Cir. 2018) ("The district court was well within its discretion to dismiss this case . . . in response to Griggs's disobedience to its prior order."); *Atl. Sounding Co. v. Fendlason*, 555 F. App'x 378, 380 (5th Cir. 2014) (affirming dismissal with prejudice when the party "repeatedly failed to appear for various proceedings, and failed to comply with district court orders"). *But see Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 n.6 (5th Cir. 1992) (noting that "[g]enerally, where a plaintiff has failed only to comply with a few court orders or rules, we have held that the district court abused its discretion in dismissing the suit with prejudice").

[17] *Bryson v. United States*, 553 F.3d 402, 403 (5th Cir. 2008) (quoting *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985)).

[18] *Webb v. Morella*, 457 F. App'x 448, 454 (5th Cir. 2012).

[19] *Callip*, 757 F.2d at 1521.

determines that dismissal was the only effective option,"[20] and that "advance warnings of possible default mitigate the requirement that the district court consider lesser sanctions."[21] "Lesser sanctions include '[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.'"[22]

Boudy was warned, at least three times—first in September 2023, again on June 12, 2024, and again on June 27, 2024—about the court's ability to dismiss her case for failure to comply with its orders.[23] The district court's June 12 show-cause order warned Boudy that "she could be opening herself up to sanctions for violating Rule 11." Likewise, its June 27 show-cause order warned "that failure to comply with the Court's orders can result in sanctions under Rule 41(b) . . . and under the Court's inherent authority to dismiss the action[] *sua sponte*." While neither warning explicitly stated that the sanction could be dismissal *with prejudice*, this court has affirmed even

---

[20] *See Atl. Sounding Co. v. Fendlason*, 555 F. App'x 378, 380 (5th Cir. 2014) (second alteration in original) (quoting *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 79 (5th Cir. 2011)); *see also Brown*, 664 F.3d at 79 (stating that even though "the district court did not explicitly address this lesser sanction in its opinion, we find that the court implicitly rejected this sanction as inappropriate because it would not effectively punish [the party's] serious misconduct").

[21] *Fendlason*, 555 F. App'x at 380 (quoting *Imperial ED Promotions, L.L.C. v. Pacquiao*, 549 F. App'x 295, 299 (5th Cir. 2013)); *see also id.* at 380 n.9 (when a "plaintiff was fully and repeatedly apprised of the possible imposition of the . . . sanction" the district court need not consider "possible alternative sanctions" (quoting *Pacquiao*, 549 F. App'x at 299)).

[22] *In re Deepwater Horizon*, 988 F.3d 192, 198 (5th Cir. 2014) (alteration in original) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)).

[23] *See Fendlason*, 555 F. App'x at 378 (affirming the district court's dismissal with prejudice when the plaintiff "had at least two warnings that dismissal was possible in this case").

when the district court did not specify that dismissal would be with prejudice.[24] Regardless, the magistrate judge warned Boudy early in the litigation—while Boudy was pro se—that failure to "comply with the Rules or a court order" may result in her case being "dismissed with prejudice" and that the court "may do so *sua sponte.*" Aside from that, Boudy conceded that "[d]ismissal *without* prejudice was not available as a lesser sanction given the likelihood that the statute of limitations for an employment discrimination suit has run."[25] These advance warnings mitigated the district court's requirement to consider lesser sanctions.[26] But beyond that, it is evident "lesser sanctions imposed by the district court—in the form of warning that [Boudy's] failure to comply with its orders would lead to dismissal—did nothing to change her behavior."[27] Because "the record reveals that the district court employed lesser sanctions prior to dismissal . . . that in fact proved to be futile,"[28] "the continued imposition of additional lesser sanctions would not serve the best interest of justice."[29]

---

[24] *See Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442-43 (5th Cir. 2016). *But see Yanez v. Dish Network, L.L.C.*, 140 F.4th 626, 633 (5th Cir. 2025) (concluding that dismissal "with prejudice was an abuse of discretion" when "the court did not indicate that the dismissal would effectively be with prejudice" and thus it was "not clear that the district court considered a lesser sanction").

[25] *See also Nottingham*, 837 F.3d at 441 (stating that this court reviews a dismissal without prejudice as it "would a dismissal with prejudice" when "the applicable statute of limitations probably bars future litigation" (quoting *Coleman v. Sweetin*, 745 F.3d 756, 766 (5th Cir. 2014))).

[26] *Fendlason*, 555 F. App'x at 380 (5th Cir. 2014) (quoting *Pacquiao*, 549 F. App'x at 299); *see also id.* at 380 n.9 (citing *Pacquiao,* 549 Fed. App'x at 299).

[27] *Barnes v. Tumlinson*, 597 F. App'x 798, 799 (5th Cir. 2015).

[28] *Callip v. Harris Cnty. Child Welfare Dep't*, 757 F.2d 1513, 1521 (5th Cir. 1985).

[29] *Barnes*, 597 F. App'x at 799; *see also Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) ("We will affirm dismissals with prejudice . . . [when] the record shows that the district court employed lesser sanctions that proved to be futile.").

No. 24-60386

We also note that lesser sanctions were likely not a viable option. Boudy conceded that dismissal *without* prejudice would be the equivalent of dismissal with prejudice due to the statute of limitations. Boudy had received numerous warnings of dismissal, which had proven unsuccessful.[30] Nor were monetary sanctions likely to have deterred Boudy's conduct in refusing to comply with the court's orders.[31] Boudy has repeatedly asserted that she is indigent and has maintained throughout this litigation that she has a "monthly fixed Social Security Disability Income of $946.00."[32] Monetary sanctions would not have been in the best interests of justice under these circumstances.[33]

Additionally, there are at least two aggravating factors present here. First, Boudy was acting pro se when she failed to respond appropriately to the court orders setting hearings, meaning she was "personally responsible for [her] failure to comply with the district court's orders."[34] Accordingly,

---

[30] *See In re Deepwater Horizon*, 988 F.3d 192, 198 (5th Cir. 2014) (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)); *see also Berry*, 975 F.2d at 1191.

[31] *See In re Deepwater Horizon*, 988 F.3d at 198 ("Lesser sanctions include '[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.'" (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)); *see, e.g., Bailey v. N.E. Indep. Sch. Dist.*, 9 F.3d 102, 102 (5th Cir. 1993) (noting that "[i]mposing a fine would be futile because [the plaintiff] is proceeding as a pauper"); *Sampson v. Giles*, 410 F. App'x 823, 825 (5th Cir. 2011) (concluding that the record supported "the finding that a lesser sanction would not better serve the interests of justice, as the court explicitly contemplated the imposition of fines and costs, but found they were inappropriate given [the plaintiff's] IFP status"); *see also Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 79 (5th Cir. 2011) (finding "that the court implicitly rejected [lesser] sanction[s] as inappropriate because [they] would not effectively punish" the party's conduct).

[32] *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1381 (5th Cir. 1994) (recognizing sanctions as serving a deterrent effect).

[33] *See Bailey*, 9 F.3d at 102; *Sampson*, 410 F. App'x at 825.

[34] *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 442 (5th Cir. 2016).

it was not clear error for the district court to find Boudy personally responsible for her failure to appear at the court's show cause hearings in light of her stated refusal to "file any future Motions with the court" mere days before the July 10 hearing, and her attempt to establish a "false paper trail, indicating that she was responding to the orders." "A litigant may not flout valid court orders."[35]  Second, and for similar reasons, it was not clear error for the district court to find that Boudy's conduct was intentional.  She refused to seek a continuance with regard to the first show cause order, and as mentioned above, she failed to appear at either of the court's show cause hearings.

In sum, Boudy's conduct was contumacious, and lesser sanctions would not be in the best interests of justice.  The district court did not abuse its discretion in dismissing Boudy's case with prejudice.

## C

We next turn to Boudy's third argument that Rule 37 precludes sanctions for noncompliance with an examination order.  Boudy contends that the "district court dismissed [her] case with prejudice . . . to punish her for not complying with the court's *sua sponte* Examination Order."

Under Federal Rule of Civil Procedure 37, "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule . . . 35 [regarding physical and mental examinations], the court . . . may issue further just orders," including "dismissing the action or proceeding in whole or in part" and "treating as contempt of court the failure to obey any

---

[35] *Id.* at 442.

order."[36]   However, the court may not "treat[] as contempt of court the failure to obey . . . an order to submit to a physical or mental examination."[37]

This court has stated in an unpublished decision that "[e]ven if a court issues an erroneous order, a party must obey the order until it is reversed through an orderly proceeding."[38]  We acknowledge this court has also stated that Rule 37 "sanctions are available only when a party declines to comply with a discovery order *permissible* under Rules 30-35."[39]  But we decline to resolve this conflict here, as we need not address the propriety of the court's examination order under Federal Rules of Civil Procedure 17(c) or 35 to respond to Boudy's argument.

The district court made clear that it was sanctioning Boudy for a pattern of misconduct, not only for her noncompliance with the examination order.  Even if we set aside Boudy's failure to comply with the examination order, Boudy: (1) did not respond to the court regarding the June 12 telephone conference until shortly after the June 12 workday had concluded, despite multiple emails and phone calls from the court that spanned several days; (2) did not move for continuance, nor attend the June 18 show cause hearing, but created a misleading paper trail of attempts to contact the court through her outside-of-office-hours and three-second phone calls; and (3) did not appear at the July 10 show cause hearing, presumably because the court did not heed her request that it be on Zoom.

---

[36] Fed. R. Civ. P. 37(b)(2)(A)(v), (vii).

[37] *Id.* 37(b)(2)(A)(vii).

[38] *Rousseau v. 3 Eagles Aviation, Inc.*, 130 F. App'x 687, 690 (5th Cir. 2005).

[39] *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 210 n.10 (5th Cir. 1990) (emphasis added).

The most Boudy does to explain why a court lacks power to sanction parties who refuse to comply with a court's valid orders is that "[a]ll of the conduct the district court cited as the basis for sanctions ultimately stemmed from [her] noncompliance with the Examination Order." Essentially, Boudy's theory is that a court's purported invalid order serves to contaminate all other orders, such that she should be excused from noncompliance with any otherwise valid court order. Boudy cites no caselaw supporting such a theory and we decline her invitation to entertain such an argument. Given the volume of other contumacious conduct that was attenuated from the Examination Order, the district court did not abuse its discretion in dismissing Boudy's case with prejudice on this ground. Moreover, for the same reason, we need not address Boudy's argument that the sanction of dismissal with prejudice is not proper process to a party's refusal to comply with a court's examination order.

## D

Finally, we take up Boudy's remaining argument that the district court abused its discretion in "sanction[ing] a litigant whose competency was substantially at issue, and who was unrepresented by counsel and not aided by guardian *ad litem* or similar representative in the litigation." Boudy supports this argument on two grounds. First, Rule 17(c) is designed to protect the interests of an incompetent, and the district court failed "to ever consider Rule 17(c)'s protections." Second, her case is distinguishable from this court's decision in *Bodnar v. Bodnar*,[40] in which we affirmed the district court's dismissal of a litigant's case who refused to submit to a mental examination.[41]

---

[40] 441 F.2d 1103 (5th Cir. 1971).

[41] *See id.* at 1104.

No. 24-60386

**1**

Under Federal Rule of Civil Procedure 17(c), "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."[42] Citing *Roberts v. Ohio Casualty Insurance Co.*,[43] Boudy contends that "[t]he district court's failure to ever consider Rule 17(c)'s protections for incompetent litigants prior to rendering a judgment of dismissal with prejudice constitutes an abuse of discretion and reversible error."

In *Roberts*, this court held that "Rule 17(c) does not make the appointment of a guardian ad litem mandatory."[44] It then "stated the general approach a district court should follow *once it determines* that a minor is inadequately represented."[45] This "approach is equally valid when determining the need for representation of an incompetent person."[46]

Boudy misses a key distinction between the *Roberts* approach and her argument: this court has only required the *Roberts* approach when a party has been adjudicated incompetent.[47] At the time of dismissal, Boudy's incompetence was still in question. Boudy cites no authority suggesting such an approach is required when a party's incompetence is merely in question.

---

[42] FED. R. CIV. P. 17(c).

[43] 256 F.2d 35 (5th Cir. 1958)

[44] *Id.* at 39.

[45] *Adelman ex rel. Adelman v. Graves*, 747 F.2d 986, 988 (5th Cir. 1984) (emphasis added).

[46] *Id.* at 989.

[47] *Id.* at 987, 989-90; *see, e.g.*, *Poree v. Morgante*, No. 00-1348, 2015 WL 1482556, at *1 (E.D. La. Mar. 31, 2015).

Moreover, to the extent the court made an implicit finding of competency, we cannot say such a finding was clearly erroneous. The court's being once concerned about "the validity of the outcome" if Boudy "claims to be" or "is determined" incompetent, does not mean it was prevented from later concluding that she was competent, especially when the court never found Boudy to be incompetent in the first place. Between May 2024—when the court issued its examination order expressing concern about the outcome of the case *if* Boudy was adjudicated incompetent—and July 2024—when the court dismissed the case for her contumacious conduct—the court had a chance to observe more of Boudy's actions, engage in further correspondence, and view additional filings. At the time it issued the sanctions order, the court stated the judge—who "has been on the bench for well over thirty years and has handled thousands of cases"—had "never seen a clearer case of a party ignoring the Court's orders." It is accordingly unclear whether the court still gave any weight to Boudy's "claims" of incompetency.

Additionally, Boudy herself stated she was "competent to understand these legal proceedings and her case, retained and assisted her former attorneys with her case while still having the same chronic and severe mental illness." In denying her motion to appoint counsel, the court found she was "able to adequately present her case" and that "she has continually demonstrated her ability to represent herself and present her case through her ability to draft and submit pleadings and discovery requests. Under the circumstances, we cannot say the court clearly erred when it found, instead of incompetence, failure "to comply with the orders that she was fully aware of and simply thought that she could do as she pleased, irrespective of the orders of this court."

**2**

In *Bodnar*, we affirmed a dismissal *without* prejudice after a party refused to submit to a mental examination to determine her competency.[48] Boudy argues her case is distinguishable because the district court dismissed her case *with* prejudice while she was proceeding pro se. She argues dismissal with prejudice was an abuse of discretion, and grounds her argument in a case from the Ninth Circuit, in which the Ninth Circuit held "that when a substantial question exists regarding the competence of an unrepresented party the court may not dismiss with prejudice for failure to comply with an order of the court."[49] In that case, the Ninth Circuit cited *Bodnar* to support the proposition that a "court may dismiss the case *without* prejudice" "[w]hen the party refuses to cooperate."[50] The Ninth Circuit, however, took *Bodnar* a step further in prohibiting dismissals with prejudice "when a substantial question exists regarding the competence of an unrepresented party."[51] The Fifth Circuit has not taken such a step, and we find it unnecessary to determine whether we should take such a step here for three reasons.

First, it is unclear whether Boudy's competence was in "substantial question," much less what constitutes a "substantial question." We acknowledge the district court found that "good cause exists for a mental evaluation" of Boudy under Rule 35, but Rule 35 is a discovery rule, so such a finding is not necessarily equivalent to a party's competence in representing

_____

[48] *Bodnar v. Bodnar*, 441 F.2d 1103, 1103-04 (5th Cir. 1971).

[49] *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989)

[50] *Id.* (emphasis added).

[51] *Id.*

themselves.[52]  Nevertheless, we need not opine on the equivalency of these standards, as the reasons that follow stand on their own in supporting our refusal to adopt the Ninth Circuit's rule in this case.

Second, as previously explained, it is ambiguous whether the court gave credence to her "claims" of incompetency or questioned her competence at the time it imposed sanctions.  It seems unlikely the court did either since it found Boudy was fully aware of the court's orders "and simply thought that she could do as she pleased."  Under the circumstances of this case, we cannot say the court clearly erred in making such a finding.

Third, as mentioned earlier, Boudy concedes that even if the district court had dismissed her case without prejudice, the statute of limitations for her case has run.[53]  Due to the above, we need not address whether the Fifth Circuit should follow the Ninth Circuit's lead.

*     *     *

For the foregoing reasons, we AFFIRM the district court's judgment as to dismissal of the case with prejudice.  We VACATE and REMAND the judgment as to attorneys' fees.

_____

[52] *See, e.g.*, *Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006) (stating that under Texas law, the standard for legal capacity to sue is "whether individuals, 'by reason of mental or bodily infirmity, [are] incapable of properly caring for their own interests in the litigation.'" (alteration in original) (quoting *Lindly v. Lindly*, 113 S.W. 750 (1908))). *See generally Schlagenhauf v. Holder*, 379 U.S. 104, 117-19 (1964) (discussing when a court may order a party to undergo a physical or mental examination under Rule 35).

[53] *See Rogers v. Kroger Co.*, 669 F.2d 317, 323 n.9 (5th Cir. 1982) (recognizing that dismissal without prejudice is "unavailable" as an alternative to dismissal with prejudice when the "statutes of limitations have run on [a party's] claims").